**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:25-cv-02907-BCL-cgc |
| CUNEO CONSULTING LLC D/BA CUNEO SECURITY et al., | ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant's Motion to Dismiss (Doc. 44). Defendant Crum & Forster Specialty Insurance Company ("CFSIC") filed a Memorandum in Opposition (Doc. 49). For the reasons set forth below, the Motion to Dismiss is **DENIED**.

**BACKGROUND**

This matter arises from a July 22, 2024, shooting in Memphis, Tennessee, where security guard Richard Lewis shot and killed his colleague, James Earl Redmon, while on duty at the Main Event entertainment center and restaurant. Doc. 44-1 at 3. Following the incident, the Estate of James Earl Redmon filed a wrongful death lawsuit ("Underlying Lawsuit") in the Circuit Court of Shelby County, Tennessee, alleging that Cuneo Consulting LLC ("Cuneo") was negligent in its hiring, training, and supervision of Lewis. *Id*.; Doc. 49 at 6. At the time of the shooting, Cuneo was insured under a policy issued by CFSIC. Doc. 49 at 6. CFSIC maintains that several exclusions in the policy preclude the duty to defend the Underlying Lawsuit on behalf of Cuneo. *Id*. at 6-7. While CFSIC is currently providing a defense for Cuneo in the Underlying Lawsuit, it does so

under a "reservation of rights," maintaining that a "Worker Injury Exclusion" within the policy precludes coverage for the death of Mr. Redmon. *Id*. at 7.

On September 25, 2025, CFSIC initiated this federal declaratory judgment action in this Court seeking a legal determination that it owes no duty to defend or indemnify Cuneo. Doc. 1. Initially, both Redmon and Cuneo sought dismissal of this action. Doc. 49 at 8. On January 12, 2026, Cuneo formally withdrew its motion to dismiss. *Id*.; Doc. 23. On March 18, 2026, CFSIC filed its second amended complaint which added Off Duty Services, Inc. ("ODS") as a named Defendant and seeks a new request for declaratory judgment that there is no duty to defend ODS as an additional insured under the Policy. Doc. 49 at 8. Additionally, the second amended complaint seeks the same Declaratory Claims and Reimbursement Claim as it relates to both Cuneo and ODS. *Id*. Redmon renewed its motion to dismiss (Doc. 44) on March 27, 2026, while Cuneo has instead filed an answer to the second amended complaint (Doc. 47). *Id*.; Doc. 44.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility requires more than factual allegations that demonstrate "a sheer possibility" of unlawful conduct or are "'merely consistent with' a defendant's liability." *Id*. If the factual allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] that the pleader is entitled to relief" and cannot survive a motion to dismiss. *Id*. at 679. In determining whether the complaint states a plausible claim, the district court

2

must accept the well-pleaded factual allegations in the complaint as true. *Id*. at 678-79. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679.

The Declaratory Judgment Act states as follows:

> In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls, Co.*, 515 U.S. 277, 288 (1995). District courts possess "unique and substantial discretion" in determining whether to entertain a declaratory action or instead leave the matter to be resolved in state court proceedings. *Id*. at 287.

If federal jurisdiction is present, the Court considers the following five factors to determine whether it should entertain a suit for a declaratory judgment under the Declaratory Judgment Act:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). The Sixth Circuit has sub-divided the fourth factor into three sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008). The Sixth Circuit requires the Court to balance the five factors but has never indicated the relative weights of each factor. *Id*. at 563. "The relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

## ANALYSIS

The Court now turns to whether this action should be dismissed pursuant to the Declaratory Judgment Act.

 i. **Factors 1 and 2: Whether the declaratory action would settle the controversy, and whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue.**

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. Because "it is almost always the case that if a declaratory judgment will settle the controversy, ... it will clarify the legal relations in issue, the inquiries required by these two factors often overlap substantially." *Burlington Ins. Co. v. Greenwood Rollerdrome, Inc.*, 420 F. Supp. 3d 632, 638 (W.D. Ky. 2019) (internal quotations omitted).

Defendant argues that these factors weigh in favor of dismissal because it will not settle the controversy in the Underlying Lawsuit. Doc. 44-1 at 7. In contrast, Plaintiff argues that the declaratory action would settle the controversy in the present action regarding the duty to defend. Doc. 49 at 14.

There are two lines of cases in the Sixth Circuit which mirror the parties' dispute on this factor: "One line of cases approved of declaratory actions because they can 'settle the insurance coverage controversy,' while a second line of cases disapproved of declaratory actions because while they 'might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy.'" *Burlington Ins. Co. v. Greenwood Rollerdrome, Inc.*, 420 F. Supp. 3d 632, 638 (W.D. Ky. 2019) (quoting *Flowers*, 513 F.3d at 555).

The Court finds this matter falls into the first camp, because the declaratory judgment action will "settle the insurance coverage controversy." *Flowers*, 513 F.3d at 556. In *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448 (6th Cir. 2003), the plaintiff sought a declaration of no duty to defend or indemnify the insured title company against a title insurance underwriter's state court claim. In holding the exercise of jurisdiction proper under the Declaratory Judgment Act, the Sixth Circuit noted that the plaintiff "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id*. at 454. The court "relied on these facts to find that a declaratory judgment would resolve the insurance coverage controversy and would clarify the legal relations at issue." *Flowers*, 513 F.3d at 556.

In the present case, CFSIC is not a party to the Underlying Lawsuit and the duty to defend is not at issue in that wrongful death lawsuit. Because this controversy involves a legal interpretation of an insurance policy rather than a factual dispute central to the underlying tort, the first *Grand Trunk* factor weighs in favor of exercising jurisdiction.

### ii. Factor 3: Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*.

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for res judicata." *Flowers*, 513 F.3d at 558.

This factor "is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Id.* Courts generally should be "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* This "factor usually does not weigh heavily in the analysis." *United Specialty Insurance Co. v. Cole's Place, Inc.*, 936 F.3d 386, 399 (6th Cir. 2019).

On the record of this case, this factor supports exercising jurisdiction under the Declaratory Act, although it is a relatively close call. Defendant argues only that this factor is "neutral." Doc. 44-1 at 7. But there is at least arguably some weight on the pro-dismissal side of the ledger: CFSIC filed this federal action before Redmon filed a subsequent action in state court (Case No. 2:25-cv-03151)—which to a jaundiced eye could look like CFSIC raced to the federal courthouse with its own suit and removed the state court action in an exercise of procedural fencing.

But the weightier considerations favor retaining jurisdiction. For example, the lengthy gaps between the relevant procedural developments indicate that this was not a race to the courthouse: Defendant filed the Underlying Lawsuit (the personal injury suit) on July 18, 2025 in state court, (Doc. 49 at 6), and Plaintiff CFSIC filed this action two months later on September 25, 2025, (*Id.*), and then Defendant filed a State Action a month after that. *Id.* at 7. Moreover, while Defendant is a party to both the Federal and State Actions, the dispute is primarily between CFSIC and its insured, Cuneo, highlighting the oddity of Defendant's belated state-court suit attempting to commandeer the coverage dispute or at least dictate its forum. If anything, on these facts, it appears that Defendant is the one engaged in procedural fencing by attempting to force the insurance recovery dispute into state court after seeing that it was filed in federal court (after a substantial lag from the filing of the Underlying Lawsuit).

For these reasons, this factor supports exercising jurisdiction, albeit slightly.

  **iii. Factor 4: Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction.**

"The fourth factor to consider is whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. In assessing whether an exercise of federal jurisdiction to decide a request for declaratory relief would increase friction between federal and state courts, courts consider the following three sub-factors. *Id.*

  **a. Whether the underlying factual issues are important to an informed resolution of the case.**

"The first of these sub-factors focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id*. at 560. In the context of actions seeking a declaration of the scope of insurance coverage, the Sixth Circuit has "recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Id*. "[T]he liability issues being determined in the state court proceeding may well be legally, if not factually, distinct from the issues of policy interpretation which are central to the federal declaratory judgment action." *Id*.

Defendant argues (without citation to supporting authority) that there is a significant overlap between the state and federal actions because the applicability of the "Worker Injury Exclusion" depends heavily on the specific circumstances of Mr. Redmon's death and his employment status at the time of the shooting. Doc. 44-1 at 9.

The Court will not have to make factual determinations at issue in the underlying lawsuit to resolve the coverage dispute. As Plaintiff notes, the duty to defend inquiry is confined to the underlying complaint and the insurance policy. Doc. 49 at 15. Any determination made by this Court regarding the scope of the "Worker Injury Exclusion" will remain legally distinct from the

7

state court's ultimate findings on liability. As the resolution of this declaratory action does not require the Court to preempt or duplicate the state court's fact-finding process, this sub-factor weighs in favor of the Court exercising its jurisdiction.

**b. Whether the state trial court is in a better position to evaluate those factual issues than is the federal court.**

The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action. *Flowers*, 513 F.3d at 560. Despite the wording of this subfactor, courts consider questions of law—not just fact—in analyzing it: The Sixth Circuit generally considers state courts to be in a better position to evaluate novel questions of state law. *Id.* "This consideration has less force, however, when the relevant state law is more straightforward.". *Nat'l Ins. Co. v. Jamestown Union Bancshares, Inc.*, 352 F. Supp. 3d 845, 858 (M.D. Tenn. 2018).

Defendant argues that this case involves an important and open issue of Tennessee law. The parties agree that no Tennessee court has interpreted the Worker Injury Exclusion Endorsement that CFSIC has invoked to avoid a duty to defend the underlying lawsuit.  Doc. 44-1 at 8. And Defendant explains that the courts that have addressed this exclusion endorsement have come to differing conclusions—a point to which CFSIC does not respond and which highlights that the issue is not so straightforward as to reduce the need for a Tennessee court to weigh in. *Id*. If, that is, a question of Tennessee law is actually presented here.

It is not.  As CFSIC explains, Tennessee courts will have no special expertise or authority here because interpretation of the Worker Injury Exclusion Endorsement will be governed by Florida law, consistent with Tennessee's adherence to the traditional doctrine of lex loci contractus. *See* Doc. 49 at 16-20; *see also Klaxon v. Stentor Electric Mftg. Co.*, 313 U.S. 487 (1941) (federal court sitting in diversity must apply the choice of law rules of the state in which it

sits). Defendant assumes Tennessee law will control and makes no argument for its application. Doc. 44-1 at 7-10. And, to the extent Defendant means to rely on its effort to escape lex loci contractus in the related action, those arguments fail for the reasons set out in the order denying remand in that action. Case No. 2:25-cv-03151 at Doc. 24.

Because Florida law will govern the meaning of the policy at issue in this coverage dispute, Tennessee state courts will have no special expertise in resolving the underlying issues. Thus, this subfactor is neutral.

> ### c. Whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

This sub-factor focuses on "whether the issues in the federal action implicate important state policies, rendering them more appropriate for state court review." *Flowers*, 513 F.3d at 561 (6th Cir. 2008). The Sixth Circuit has frequently observed that "insurance contract interpretation [questions] are questions of state law with which the state courts are more familiar and, therefore, better able to resolve." *Travelers Indem. Co. v. Bowling Green Prof'l Assoc.*, 495 F.3d 270, 273 (6th Cir. 2007). Because "[s]tates regulate insurance companies for the protection of their residents…state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous*, 373 F.3d at 815. In this case, however, neither this Court nor the potential Tennessee state forum is uniquely well positioned to decide the relevant issues of law and policy, because (as just noted) Florida law governs the meaning of the relevant insurance policy. Thus, like the subfactor that preceded it, this factor is also neutral.

> ### iv. Factor 5: Whether there is an alternative remedy which is better or more effective.

A district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. "One of the alternative remedies available to the federal

declaratory plaintiff is to seek a declaratory judgment in state court." *Flowers*, 513 F.3d at 562. "Another possible remedy is for the federal declaratory plaintiff to file an indemnity action at the conclusion of the state action." *Id*.

Defendant points out that Plaintiff has other remedies available to it but does not expound on why they are "better or more effective." Doc. 44-1 at 8-9. Plaintiff argues that a state remedy will not be more effective because Tennessee state law is not at issue. Doc. 49 at 23. They further argue that waiting until the conclusion of the Underlying Lawsuit is no more effective since their claims are currently ripe. *Id*.

Ultimately, CFSIC's argument regarding the ripeness of the current dispute is persuasive. To the extent the comparison is between a declaratory judgment action in state court and a declaratory judgment action in federal court, there is no obvious reason why a state court action would be more effective—unless, of course, the state courts are better suited to resolve the legal or factual issues, in which case this factor will simply follow the fourth factor, discussed above. *See Cole's Place*, 936 F.3d at 401 (noting state declaratory judgment action can be more effective if state court would be applying its own law).  But if this factor is doing independent work, it is neutral when one considers the possibility of a state court declaratory judgment action. And an indemnity (or similar) action at the end of the Underlying Lawsuit is not better or more effective, because the duty-to-defend dispute is ripe now and delay in resolving it will do nothing but leave open a window for confusion and complication as the Underlying Action works its way to conclusion.

Thus, to the extent it does independent work, the fifth factor is either neutral or slightly favors exercising federal jurisdiction consistent with the Declaratory Judgment Act.

*      *      *

10

Because all of the governing factors are either neutral or support exercising jurisdiction to decide this declaratory judgment action, the Court will not dismiss Plaintiff's declaratory judgment action.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is **DENIED**.

**SO ORDERED** this 13th day of April, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE

11